UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DEMETRA GEORGIA CAPORAL,　　　　　　　　　　　Case No. 23-10087-t13

　　　Debtor.

## MEMORANDUM OPINION

Before the Court is a motion for relief from the automatic stay, filed by Debtor's estranged husband. He seeks stay relief so he and Debtor can complete a divorce proceeding, including property settlement, pending in state court. Debtor opposes the motion; she argues that allowing the state court to finalize the divorce would unduly delay her bankruptcy case, effectively denying her relief. If Debtor prevails, the Court would in essence have to divide the marital property.

The Court holds that the state court is the better forum for such tasks. The Court therefore will modify the stay and abstain from exercising its jurisdiction over the property settlement. Once the state court apportions the marital property and liabilities, Debtor can take up her chapter 13 plan and seek confirmation if she still needs bankruptcy relief.

A.　　Facts.[1]

The Court finds:[2]

Debtor and Dr. Demosthenis Klonis ("Klonis") were married in 1997. They have twin boys, born in 2003.

---

[1] The Court takes judicial notice of the docket in this case, in the pending divorce proceeding in the Third Judicial District Court, Case No. D-307-DM-2020-00726 (the "New Mexico Divorce Case"), and the dismissed divorce case that movant filed in 2017 in Oklahoma, no. FD-2017-2417 (the "Oklahoma Divorce Case"). *See, e.g., St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

Klonis, a cardiac surgeon, got into legal trouble in or around 2008. Allegations were made that he was performing unnecessary pacemaker implant surgeries. One result of the allegations that he and Debtor engaged in "asset planning." The planning included creating, in October 2009, Mook and Chick, LLC, a Texas limited liability company (the "LLC"). Half the membership interest was assigned to Debtor's revocable trust and the other half to Klonis' revocable trust. In March 2010 Klonis conveyed his 25% interest in certain real property in Santa Fe (known as the "Roberts Building") to the LLC.

Members' rights and obligations are set out in a lengthy "Company Agreement" signed by Debtor and Klonis. Under the agreement, it takes two thirds of the membership interests to authorize certain transactions. For example, if Debtor proposed that the LLC sell its interest in the Roberts Building but Klonis objected, the sale could not be completed. The Company Agreement also has restrictions on the sale of membership interests. If Debtor wanted to sell her interest in the LLC to a third party, the interest would first have to be offered to the LLC, then to Klonis, then to a third party, all offers being on, materially, the same terms. Finally, after mediation and arbitration, the Company Agreement has processes to follow in the event of a "deadlock." Given their history, Debtor and Klonis are likely to deadlock in their views about how to deal with the LLC interests and/or the Roberts Building. Thus, any attempt by Debtor to sell her LLC interest probably would result in protracted, expensive litigation.

Another consequence of Klonis's legal troubles was that he began spending more and more time in Greece (he is a dual citizen), away from Debtor and the children. The separation took its toll on the marriage. Klonis filed a divorce petition in Oklahoma on August 1, 2017. Two days later Debtor filed a divorce petition in New Mexico. The New Mexico proceeding was dismissed in March 2018 because the Oklahoma case had been filed first. After much litigation, the

-2-
Case 23-10087-t13    Doc 80    Filed 07/21/23    Entered 07/21/23 13:23:29 Page 2 of 11

Oklahoma case was dismissed for lack of subject matter jurisdiction on October 21, 2020. Debtor filed a new divorce proceeding in New Mexico on August 10, 2020. The case proceeded slowly while Klonis appealed the Oklahoma court's dismissal of his divorce action. After the Oklahoma Supreme Court denied Klonis' petition for certiorari on January 18, 2022, however, the litigation in the New Mexico divorce proceeding picked up. Klonis filed a motion for a bifurcated decree of divorce on January 9, 2023.

Debtor filed this case on February 7, 2023, and filed her first chapter 13 plan on March 2, 2023. The bar date in the case was April 18, 2023. The filed claims can be summarized as follows:

| | |
|---|---|
| Mortgage loan: | $ 140,119 |
| General unsecured: | $ 35,209 |
| Insider unsecured: | $ 242,437 |
| Klonis: | $1,911,207 |

On June 1, 2023, Debtor filed an amended chapter 13 plan. The plan proposes monthly payments of $350 for 60 months and to pay the home mortgage "outside" the plan. In addition, the plan proposes to sell Debtor's membership interest in the LLC and estimates that the sales proceeds would be between $400,000 and $625,000. The net proceeds would be paid to creditors. Together, the proposed plan payments would be sufficient to pay creditors in full, only *if* Klonis' large claim is disallowed. On the other hand, if Klonis' claim is allowed in full, the plan could not be confirmed because of the "best interests of creditors test."[3]

Klonis objected to the amended chapter 13 plan, arguing, inter alia, that Debtor cannot sell her LLC membership interest.

---

[3] *See* Section 1325(a)(4). To pass the best interests of creditors test, Debtor's plan must either pay creditors in full or else pay them the net value of her LLC interest plus the value of her nonexempt equity in her house (about $347,000). Her proposed plan payments fall short.

Klonis' proof of claim reflects his position in the divorce proceeding, where he argues that Debtor improperly dissipated community assets. The proof of claim includes, for example, alleged debts because of the following:

| Item | Value |
|---|---|
| Money removed from Husband's Mother's account | $147,000 |
| Money removed from Safe Deposit Box | $214,680 |
| Money removed from George Klonis Arvest Bank Account | $115,533.33 |
| Money removed from Vageli Klonis Arvest Bank Account | $113,172.86 |
| Loan given to Wife's Brother | $80,000 |

In each case, Klonis declares that the item is a marital "asset," assigns it to Debtor, and asserts a claim for the same amount. According to Klonis, the total value of these and other "assets" is $1,911,206.77. He assigns them all to Debtor and asserts a claim against her for $1,911,206.77.

Debtor objected to Klonis' proof of claim on May 8, 2023. The claim objection is pending. The Court would not be able to rule on Klonis' claim without adjudicating the entire marital dispute between Debtor and Klonis and dividing all marital assets and liabilities.

B.  Modifying the Automatic Stay "For Cause."

Klonis asks that the Court lift the automatic stay "for cause" under 11 U.SC. § 362(d)(1). The automatic stay generally stays "litigation, enforcement of liens, and other actions, be they judicial or otherwise, which would affect or interfere with property of the estate, of the debtor, or which is in the custody of the estate." *In re Jim's Maint. & Sons Inc.*, 418 F. App'x 726, 728 (10th Cir. 2011) (quoting *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987)).

The automatic stay is intended "to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting

judgments from different courts and in order to harmonize all of the creditors' interests with one another." *In re Curtis*, 40 B.R. 795, 798 (Bankr. D. Utah 1984), quoting *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976). Bankruptcy courts may modify the automatic stay for "cause." § 362(d)(1).

The Tenth Circuit has held that because "there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), overruled on other grounds, *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011). "Cause" is considered a fact, not a conclusion of law, and a finding of cause is reversible only if "clear error" was committed. *In re JE Livestock, Inc.*, 375 B.R. 892, 893-94 (10th Cir. BAP 2007).

1. <u>The *Curtis* factors</u>. Motions for relief from the automatic stay are often filed so litigation pending in another forum can proceed to judgment. In such situations, the Tenth Circuit "has not set forth a precise framework or exhaustive set of factors for analyzing whether cause exists." *In re Gindi*, 642 F.3d at 872. Courts often turn to 12 non-exclusive factors identified in *Curtis* to assist in the analysis. *See, e.g., In re Busch*, 294 B.R. 137, 141 (10th Cir. BAP 2003) ("Twelve factors were identified in [*Curtis*] as some of the issues a bankruptcy court might consider when determining whether to lift the stay to permit pending litigation in another forum."). The "*Curtis* factors" are: (1) Whether the relief will result in a partial or complete resolution of the issues; (2) The lack of any connection with or interference with the bankruptcy case; (3) Whether the foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) Whether the action essentially involves third parties, and the debtor

functions only as a bailee or conduit for the goods or proceeds in question; (7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) The impact of the stay on the parties and the 'balance of hurt.' *Curtis*, 40 B.R. at 799-800. The Court weighs the *Curtis* factors as follows:

| Factor | Discussion |
|---|---|
| 1. Whether the relief will result in a partial or complete resolution of the issues. | Completing the divorce and the marital property settlement would greatly simplify this case. It could even mean that Debtor does not need bankruptcy relief. |
| 2. The lack of any connection with or interference with the bankruptcy case. | There is a close connection between finishing the pending divorce proceeding and this chapter 13 case. |
| 3. Whether the foreign proceeding involves the debtor as a fiduciary. | N/A |
| 4. Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases. | The state court is a specialized tribunal when it comes to divorce. There are judges in the third judicial district who handle domestic relation cases. *See generally* the discussion in Part D below. |
| 5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation. | N/A |
| 6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question. | N/A |
| 7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties. | There would be no prejudice. Creditors would benefit from the expertise of the state divorce court. |

| | |
|---|---|
| 8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c). | N/A |
| 9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f). | N/A |
| 10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties. | Dividing the marital property will be complicated, involving the adjudication all of marital disputes, assets, and liabilities. Judicial economy would be better served if a specialized tribunal deals with these issues. |
| 11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial. | The parties have conducted discovery but may not yet be ready for trial. |
| 12. The impact of the stay on the parties and the 'balance of hurt.' | The only real question here is which court adjudicates the significant disputes between Debtor and Klonis and divides the marital property. It must be done before Debtor can obtain bankruptcy relief. The state court is the better court to preside over the divorce/property settlement issues. |

2. <u>The *Crespin* factors</u>. The Court issued *In re Crespin*, 581 B.R. 904 (Bankr. D.N.M. 2018), in which it identified certain of the *Curtis* factors, and certain other factors, that often are the most relevant to determining whether to modify the automatic stay to allow a party to proceed with pending litigation in another court. The "*Crespin*" factors are: (1) Whether the nonbankruptcy court is a specialized tribunal; (2) Whether granting stay relief would hinder or delay estate administration; (3) Whether the facts of the matter require a deviation from the Court's core function of allowing or disallowing claims; (4) Whether lifting the stay would promote judicial economy; (5) Whether it would be less expensive for the parties to litigate in bankruptcy court; (6) Whether lifting the stay would prejudice other creditors; (7) The movant's likelihood of prevailing in the litigation; and (8) Whether the "balance of the hurt" weighs in favor of or against stay relief. *Crespin*, 581 B.R. at 908-10. The Court weighs the *Crespin* factors that have not been discussed as part of the *Curtis* analysis:

| Factor | Discussion |
|---|---|
| 1. Whether the nonbankruptcy court is a specialized tribunal. | Discussed above and below. |
| 2. Whether granting stay relief would hinder or delay estate administration. | It depends on which court can complete the property settlement more expeditiously. The Court may have more availability on its calendar (although there is no evidence on this point), but the state court has more expertise in divorce matters and has had the case for some time. The delay in completing the property settlement seems to be the fault of the parties, not the state court. |
| 3. Whether the facts of the matter require a deviation from the Court's core function of allowing or disallowing claims. | Divorce property settlement is not the same as allowing or disallowing claims, so a deviation would be required. |
| 4. Whether lifting the stay would promote judicial economy. | Overall, it makes more sense for the specialized tribunal to divide the parties' property as part of the divorce proceeding. |
| 5. Whether it would be less expensive for the parties to litigate in bankruptcy court. | It should be less expensive to complete the property settlement in state court than this court. No jury trial is involved, and the state court has the expertise. |
| 6. Whether lifting the stay would prejudice other creditors. | Whether the Court lifts the stay or not, creditors will have to wait until the marital property is divided before this case can proceed. |
| 7. The movant's likelihood of prevailing in the litigation. | N/A. Property settlement is not win/lose. |
| 8. Whether the "balance of the hurt" weighs in favor of or against stay relief. | Discussed above. |

Overall, the *Curtis/Crespin* factors strongly support granting Klonis stay relief so the state divorce court can divide the marital property.[4]

---

[4] The dissolution of the marriage itself is not subject to the automatic stay. *See* § 362(b)(2)(A)(iv) ("[t]he filing of a petition … does not operate as a stay … under subsection (a) – of the commencement or continuation of a civil action or proceeding … for the dissolution of marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate …").

C. Bankruptcy Courts Dividing Marital Property.

Bankruptcy courts may not enter divorce decrees or deal with child custody issues. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). They may, however, apportion property between divorcing spouses. *See, e.g., In re Ament*, 2020 WL 354888, at *4 (Bankr. D.N.M.) (under 28 U.S.C. § 1334(c)(1), bankruptcy court had exclusive jurisdiction over division of community property that is property of the bankruptcy estate).

However, most bankruptcy courts decline to wade into divorce property settlements, holding that the state divorce court is the more appropriate forum. *See, e.g., Lewis v. Lewis (In re Lewis)*, 423 B.R. 742, 754 (Bankr. W.D. Mich. 2010) ("Regarding the division of marital property, it will almost always be appropriate for a bankruptcy court to abstain"); *Ament*, at *4 (typically, it is appropriate to let the state court divide the marital property).

> It is appropriate for bankruptcy courts to avoid invasions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'

*In re White*, 851 F.2d 170, 173 (6th Cir. 1988) (citing *In re MacDonald,* 755 F.2d 715, 717 (9th Cir.1985); *In re Graham,* 14 B.R. 246, 248-49 (Bankr. W.D. Ky. 1981) (same); *In re Fisher*, 67 B.R. 666, 670 (Bankr. D. Colo. 1986) ("Bankruptcy courts in general which have been confronted with domestic relations matters have tended to have those matters resolved in the state court."); *In re Gardner,* 26 B.R. 65, 69 (Bankr. W.D.N.C. 1982) (same); *In re Clark,* 26 B.R. 263, 264 (Bankr. S.D. Fla. 1982) (same); *In re Boyd,* 31 B.R. 591, 596 (D.C. Minn. 1983) (same); *see generally Irish v. Irish*, 842 F.3d 736, 741 (1st Cir. 2016) ("[S]tate courts are experts at dividing marital property, entering the necessary decrees, and handling the sensitive conflicts that follow"); *In re Hursa*, 87 B.R. 313, 324 (Bankr. D.N.J. 1988) (allowing property division to proceed in state court will define the nature and extent of property contained in the bankruptcy estate).

The accepted procedure for allowing state courts to divide marital property when one spouse files bankruptcy is to modify the automatic stay and abstain from adjudicating the property settlement. *See, e.g.*, *Ament*, at *4; *Lewis* at 754; *Carver v. Carver,* 954 F.2d 1573, 1578-80 (11th Cir. 1992) (discussing the public policy supporting abstention in domestic relations matters, which applies in bankruptcy cases).

The Court agrees with the case law cited above that marital property settlements are almost always better left to the state divorce courts. They are specialized tribunals. All they hear are divorce cases, including divorce decrees, child custody disputes, alimony and support issues, and property settlements. Just because the Court *can* adjudicate a property settlement does not mean it *should*. Unless there is a compelling reason for a bankruptcy court to "sub in" for the divorce court, it should defer to the state court, whose experience and expertise in such disputes is vastly greater. No such compelling reason exists here.

Deference to the state divorce court is warranted here in particular, as the bankruptcy case was filed in the middle of a contentious divorce proceeding. The timing of the filing and the high percentage of insider creditors give rise to the question whether forum shopping or some other improper purpose was involved in the decision to file bankruptcy. *See, e.g., White*, 851 F.2d at 174 ("We affirm the decision to lift the stay under the circumstances here because we are concerned that the Bankruptcy Code could otherwise be abused as a weapon in a marital dispute."). To avoid any potential misuse of the Code and/or forum shopping, stay relief and abstention are indicated.

## Conclusion

Klonis' motion to modify the automatic stay will be granted by a separate order, and the Court will abstain from hearing the marital property settlement dispute. Stay relief is not necessary for the state court to enter a divorce decree.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered July 21, 2023
Copies to: Counsel of Record